| | | | |
|---|---|---|---|
| STATE OF INDIANA | ) | | IN THE PORTER SUPERIOR COURT |
| | ) | SS: | |
| COUNTY OF PORTER | ) | | CAUSE NO._____ |
| | | | |
| KIMBERLY PEREZ, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| VALPARAISO CARE AND | ) | | |
| REHABILITATION CENTER, LLC, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## **COMPLAINT**

Plaintiff, by counsel, alleges against Defendant as follows:

1. The Plaintiff is Kimberly Perez, who was a qualified female employee of the Defendant's at all material times to this Complaint.

2. The Defendant is Valparaiso Care and Rehabilitation Center, a company doing business at 606 Wall Street, Valparaiso Indiana, 46383. At all material times to this Complaint, the Defendant was an "employer for the purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. ("Title VII").

3. The Defendant is also liable to the state torts of its employees, to which they subjected the Plaintiff, under the doctrine of *respondeat superior*, such as intentional infliction of emotional distress, and the Defendant is liable to the Plaintiff for the negligent retention of an employee that it knew had an ongoing history of sexually harassing (and assaulting) female staff, including the Plaintiff.

4. The Plaintiff filed a Complaint of Discrimination with the Indiana Civil Rights Commission on July 2, 2018, ICRC/HUD No. 24F-2018-01795, a copy of which is attached hereto

and made a part hereof as Exhibit A. The EEOC issued a Dismissal and Notice of Rights/ Notice of Suit Rights for it, on March 13, 2020, a copy of which is attached hereto and made a part herein as Exhibit B. Plaintiff an additional Charge of Discrimination with the EEOC on July 6, 2018, No. 470-2018-03166, a copy of which is attached hereto, made a part hereof and incorporated herein as Exhibit C. The EEOC issued a Dismissal and Notice of Rights/ Notice of Suit Rights on March 12, 2020 for Charge No. 470-2018-03166 on March 12, 2020, a copy of which is attached hereto and made a part hereof as Exhibit D. All administrative remedies have been exhausted and all jurisdictional prerequisites have been met for the filing of this lawsuit.

5. Plaintiff was employed by the Defendant from October 11, 2010 until her wrongful termination by constructive discharge in August 2018.

6. Plaintiff was a hardworking and dedicated Certified Nursing Assistant (CNA) who had performed within the reasonable expectations of the Defendant at all material times to this Complaint. Plaintiff had been working for Defendant on an "as needed" basis (PRN) since 2014, although she frequently working at least 35 hours or more per week. By 2018, Plaintiff had asked to be switched back to being a fulltime position. Defendant promised her they would do so.

7. By way of background: During at least the last year if her employment by the Defendant, if not longer, the Plaintiff suffered repeated occasions in which she was sexually harassed by a male coworker. As a result, she complained of the harassment to the Defendant on multiple occasions. During the period of approximately December 2017 to May 2018, the male employee made frequent (weekly) sexually harassing and offensive comments to the Plaintiff, and on 5-6 occasions he also grabbed and groped the Plaintiff's breasts, and/or behind. The Plaintiff complained to the Defendant about the harassment.

2

8. In addition, by information and belief, Defendant was aware that the same male employee (a CNA) not only sexually harassed the Plaintiff, but also other female employees. Yet the male employee's misconduct was tolerated by the Defendant.

9. The male employee targeted the Plaintiff again for harassment and sexual battery on May 14, 2018. On that date, he walked up behind the Plaintiff while she was working in a patient's room, grabbed her buttocks with both of his hands, and squeezed. In response to this highly offensive, obscene and unwelcomed action, the Plaintiff let out a scream, struck the harasser (in self defense), and yelled at him to stop. The incident occurred within hearing shot of one of the Defendant's managers, but the manager failed to intervene and just told the Plaintiff to "lower her" or voice. The Plaintiff complained to her supervisor and the director of nursing about this incident. The Plaintiff also later reported the assault to law enforcement, and pursued criminal charges relating to the unconsented to physical touching

10. Plaintiff further complained of the May 14, 2018 incident, to the Defendant's executive directors. The harasser was then suspended, after admitting to the Defendant that he had indeed laid his hands on the Plaintiff's behind. (The employee also eventually pleaded guilty to a Level 6 felony as a result of the assault.)

11. After the Plaintiff's May 14, 2018 sexual harassment complaint, Defendant went back on its word and refused to move the Plaintiff back to full time work status, in spite of having sufficient unfilled work hours and/or having an open position available to move the Plaintiff into.

12. On May 18, 2018, Plaintiff was informed by Defendant's two Directors that the male employee claimed he was "just playing around", so Defendant was going to permit him to return to work.

3

13. On multiple occasions after that, the harasser returned from his suspension and he engaged in further unwelcomed and harassing conduct towards the Plaintiff. For between 1-2 months after the May 14th assault, Plaintiff continued to have to work with him. Although she did her best to avoid interacting with him, the male employee would stand and make a point of staring, glaring and grinning at her whenever he saw the Plaintiff. He also spread false allegations against the Plaintiff to her coworkers, claiming the Plaintiff did not do her work, that she was racist, and he told their coworkers that the Plaintiff had lied and exaggerated about what he had done to the Plaintiff. This incited significant animosity towards the Plaintiff, to the point where some of her coworkers stopped speaking to her and shunned her.

14. On June 4, 2018, Plaintiff went back to one of Defendant's Directors and again complained about the male employee's behavior. Plaintiff's complaint fell on deaf ears. The Director accused Plaintiff of "acting as if she was in high school", and that Plaintiff should just deal with it herself.

15. Plaintiff contends that following her May 2018 complaint(s) about sex harassment, the Defendant retaliated against the Plaintiff in multiple ways, such as by refusing to move the Plaintiff to a full time regular position after agreeing to do so, by moving her to a less desirable work shift (third shift), increasing her workload, reducing her hours, giving her unjustified disciplinary actions for conduct of which similarly situated employees were not disciplined, and forcing her to continue working with the employee that had sexually harassed and assaulted her.

16. On or about August 29, 2018, Plaintiff's work environment had become so hellish that she had no choice but to quit in order to maintain her sanity. She was thus terminated by the Defendant via constructive discharge.

17. Plaintiff contends that Defendant discriminated against, harassed, and unlawfully retaliated against her on the basis of her sex (female) and because of her complaints of sexual harassment.

18. Plaintiff also contends that the Defendant negligently retained the male employee that had harassed and assaulted her, knowing his history of sexually harassing conduct, and that the Defendant, both through that male employee and through Defendant's own direct conduct of ignoring the Plaintiff's complaints of harassment and then later retaliating against her, subjected the Plaintiff to the intentional infliction of emotional distress.

19. Defendant's discriminatory, harassing, and retaliatory and tortious conduct was the direct and proximate cause of the Plaintiff suffering the loss of her job and job-related benefits including income, and additionally subjected the Plaintiff to inconvenience, emotional distress, and other damages and injuries.

20. The Defendant's unlawful sexually discriminatory, harassing, and retaliatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of the Plaintiff's federally protected rights under Title VII. Imposition of punitive damages is therefore appropriate.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for lost wages, compensatory damages, punitive damages, front pay, reasonable attorney's fees and costs, and for all other just and proper relief in the premises.

## JURY DEMAND

Pursuant to Rule 38(b) of the Indiana Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**CHRISTOPHER C. MYERS & ASSOCIATES**

/s/ Christopher C. Myers
Christopher C. Myers, #10043-02
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802
Telephone: (260) 424-0600
Facsimile: (260) 424-0712
E-mail: cmyers@myers-law.com
Counsel for Plaintiff

*6/8/20*
*IMS/js*